IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GAIL ANN SIGHTS,                                    Case No. 6:15-cv-00717-AA
                                                    OPINION AND ORDER
            Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

            Defendant.

_____

Alan Stuart Graf, P.C.
208 Pine Street
Floyd, Virginia 24091
      Attorney for plaintiff

Janice E. Hébert
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Sarah L. Martin
Special Assistant United States Attorney
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
      Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Gail Ann Sights brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

On April 2, 2012, plaintiff protectively filed for DIB. 131-39. She alleges disability beginning April 12, 2012,[1] due to learning disability, memory loss, varicose veins, back problems, dyslexia, and seizures. Tr. 67, 156. The claim was denied initially and upon reconsideration. Tr. 16. On April 22, 2014, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 30. Plaintiff, represented by counsel, testified, as did a vocational expert ("VE"). Tr. 30. On June 5, 2014, the ALJ issued an unfavorable decision. Tr. 25. On February 23, 2015, the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff then filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir.

---

[1] Plaintiff originally asserted a disability onset date of November 23, 2011, the day she was in a car accident that caused her back pain and other problems. Tr. 36, 152. At the hearing, she amended her onset date to April 12, 2012, the day she left her most recent job. Tr. 37.

2014) (internal quotations marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is susceptible to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed because "the court may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Brown v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since April 12, 2012, the alleged disability onset date. Tr. 18; 20 C.F.R. §§ 04.1520(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: degenerative disc disease and seizure disorder. Tr. 18; 20 C.F.R. §§ 1520(a)(4)(ii), ( c). At step three, the ALJ determined plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments "that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Tr. 20; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

The ALJ found plaintiff retained the residual functional capacity ("RFC")

to perform light work as defined in 20 C[.]F[.]R[. §] 404.1567(b) except the claimant is further limited to no more than occasional climbing of ropes, scaffolds, and ladders. The Claimant would also need to avoid more than occasional exposure to moving machinery, unprotected heights, and similar hazards.

Tr. 20; 20 C.F.R. § § 404.1520(e). At step four, the ALJ concluded plaintiff was capable of performing past relevant work as a sorter and ticket taker. Tr. 25; 20 C.F.R.§§ 404.1520(a)(4)(iv), (f). Accordingly, the ALJ found plaintiff had not been under a disability from April 12, 2012, through the date of his decision. Tr. 25.

## DISCUSSION

Plaintiff argues the ALJ erred when he (1) gave little weight to plaintiff's subjective symptom testimony; (2) rejected certain medical opinions by plaintiff's treating physicians; and (3) found plaintiff's carpal tunnel syndrome was not a severe impairment.

I.    *Plaintiff's Subjective Symptom Testimony*

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* If the claimant meets this first test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so. *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff states she has "sharp" pain in the "middle of her back" and in her "lower back." Tr.

206. She experiences the pain "all day [and] night long." Tr. 206. She stopped working in April 2012 because her pain "became aggressively worse and finally was too much" to permit her to keep working. Tr. 38. The pain was so severe she could not move and was "crying a lot" at work. Tr. 198. "Standing or walking hurts for any long period of time." Tr. 39. She is able to go shopping, but not "for a very long time because then it starts hurting [her] back." Tr. 41. She can walk for "[m]aybe a block" before she needs to rest. Tr. 45. She participated in a three-mile charity walk but "was in a lot of pain" by the end. Tr. 45. She is in pain "all day." Tr. 199.

The ALJ found plaintiff's impairments could be expected to produce the symptoms alleged. Tr. 21. However, the ALJ determined plaintiff's statements regarding the purported intensity, persistence, and limiting effects of her impairments were not entirely credible. Tr. 21.

The ALJ first concluded the "objective medical evidence of[] record is inconsistent with [plaintiff's] alleged pain level." Tr. 23. An ALJ may consider inconsistencies between subjective symptom testimony and objective medical evidence in determining whether to credit that symptom testimony. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (listing identification of "several contradictions between claimant's testimony and the relevant medical evidence" among clear and convincing reasons supporting rejecting of pain testimony). Here, the ALJ provided several clear, specific examples of inconsistency between objective medical evidence and plaintiff's proclaimed pain level. For example, the ALJ noted that during one doctor's visit plaintiff asserted "10/10" pain in her central back, but the physician observed plaintiff only displayed "some mild discomfort" when sitting, transitioning, or standing during the examination. Tr. 21-23, 278. The ALJ also cited a different doctor's notation of a discrepancy between plaintiff's subjective pain allegations and her appearance. Tr. 22-23, 427 ("I note that she rates her pain scale at a 9. She does

not look overtly uncomfortable until she tries to get off the bench in the room and then she winces.").

Plaintiff cites *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986), for the proposition that "it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." But the ALJ did not discredit plaintiff's pain complaints due to absence of medical evidence, she found those complaints inconsistent with the doctors' objective observations. The ALJ rationally considered assertions of 9/10 and 10/10 pain inconsistent with demonstrating only mild to moderate discomfort.

The ALJ also found plaintiff's pain testimony inconsistent with her reported activities of daily living ("ADL"). An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms" in evaluating the credibility of symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Here, the ALJ noted plaintiff completed a three-mile charity walk, took partial responsibility for household chores, made short grocery store trips, threw a Frisbee to her grandson's dog, visited with her neighbors, and performed 2-3 hour stretches of yard work. Tr. 23-24.

Plaintiff attempts to explain her ability to engage in these activities by asserting her pain waxes and wanes. Pl.'s Br. 8-9. There is ample evidence of waxing and waning pain in the record. For example, Dr. Gittins wrote plaintiff's self-reported pain levels "wax and wane." Tr. 348. In a questionnaire, Dr. Beckstrand noted likely "flareups" of pain. Tr. 463. Dr. Weller stated in January 2012 that plaintiff reported "her pain is often worse first thing in the morning[.]" Tr. 270. In April 2012, plaintiff told Dr. Gittins her pain levels were "mild in the morning" and progressively worsened throughout the day. Tr. 315. And at the hearing, plaintiff testified some days are worse than others in terms of pain. Tr. 47.

Page 6 - OPINION AND ORDER

However, plaintiff repeatedly alleges she is always in pain. In a June 2012 pain and fatigue questionnaire, plaintiff reported "pain all the time and it is all day and night long." Tr. 206. In an adult function report filled out the same month, plaintiff stated she was "in pain all day" and she "go[es] to bed . . . in pain[,] sleep[s] 3-4 [hours]," and then is up every hour due to pain. Tr. 199. In short, even accepting that plaintiff's pain waxes and wanes, plaintiff repeatedly stated her pain is severe even during the "waning" periods. The ALJ permissibly found plaintiff's ADLs inconsistent with these allegations of constant pain.

Next, the ALJ noted plaintiff chose not to take prescribed medications or engage in a set of other suggested treatments in favor of homeopathic remedies. Tr. 23. Electing conservative treatment permits an inference that symptoms are not as severe as alleged. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ described a July 2012 doctor's visit in which plaintiff reported she had attended six physical therapy sessions without noticing any significant improvements. The ALJ stated "[t]here are no corresponding treatment records in the file to support the claimant's statements that she attended PT." Tr. 22. With respect to a June 2012 independent medical exam by Dr. Muzzana, a chiropractor, the ALJ noted the record did not contain "a copy of the actual exam or the findings." Tr. 22. After the ALJ issued his decision, plaintiff submitted additional evidence to the Appeals Council. That evidence included physical therapy notes from visits in May through August 2012 and Dr. Muzzana's examination report.

Plaintiff argues this new evidence "significantly changes" the credibility analysis. Pl.'s Br. 14. I disagree. First, Dr. Muzzana confirms plaintiff suffers from back pain and numbness/tingling in her hand and states those symptoms stem from cerviothoracic injuries and carpal tunnel symptom.

Tr. 472. However, Dr. Muzzana says nothing about the severity of plaintiff's pain or how that pain affects plaintiff's ability to work. Dr. Muzzana's report therefore does not affect the ALJ's evaluation of plaintiff's testimony regarding symptom severity.[2]

The supplemental evidence does undercut one of the ALJ's reasons for discrediting plaintiff's testimony:  the absence of the physical therapy and chiropractic examination notes is not a convincing reason to question plaintiff's pain testimony, as those records clearly exist. However, any error was harmless. The ALJ's decision also rested on inconsistencies between plaintiff's pain testimony and her ADLs, treatment choices, and doctors' observations, all of which are clear, convincing reasons for rejecting plaintiff's testimony. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (when ALJ's decision rested on at least one impermissible consideration, "[t]he relevant inquiry . . . is whether the ALJ's decision remains legally valid, despite such error"). The ALJ's decision to discredit plaintiff's subjective symptom testimony is supported by substantial evidence.

II.    *ALJ's Rejection of Medical Opinions*

Plaintiff next argues the ALJ did not give sufficient reasons to reject the opinions of two treating physicians, Dr. Weller and Dr. Beckstrand. The ALJ is the arbiter of conflicting and/or ambiguous evidence in the medical record. *Edlund*, 253 F.3d at 1156. If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ may reject the treating opinion only by

---

[2] Defendant argues the Commissioner was free to disregard Dr. Muzzana's opinion because chiropractors are not acceptable medical sources. That is a misleading oversimplication of the law. Under the regulations, only an acceptable medical course may offer evidence to *establish* a medically determinable impairment.  20 C.F.R. § 416.913(a).  But the regulations expressly provide for the use of chiropractors' opinions in evaluating impairment *severity*. *Id.* § 416.913(d)(1).

providing specific, legitimate reasons based on substantial evidence in the record. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected by the ALJ only for "clear and convincing" reasons supported by substantial evidence in the record. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

First, plaintiff asserts the ALJ gave insufficiently specific reasons for rejecting Dr. Weller's April 23,2012 report. In that report, Dr. Weller noted plaintiff was applying for disability benefits "related especially to the thoracic pain, seizure disorder and carpal tunnel syndrome." Tr. 279. The ALJ gave Dr. Weller's opinion little weight because Dr. Weller "fail[ed] to note why these conditions are disabling and how they affect the claimant's actual level of function." Tr. 24. The ALJ also considered Dr. Weller's objective findings of thoracic tenderness and some loss of range of motion inconsistent with total disability. Tr. 24.

Any error in giving little weight to the April 23 report was harmless. The plaintiff's properly discredited subjective pain statements must be removed from that report. With those statements removed, the report — even if credited as true — would establish only that plaintiff had some tenderness and loss of motion and required further thoracic workup. The report contains no specific limitations about plaintiff's ability to function in the workplace. Moreover, the level of pain supported by Dr. Weller's objective clinical findings is adequately accounted for by the RFC's limitation to light work.[3]

---

[3] The ALJ apparently interpreted Dr. Weller's April 23 note as an opinion that plaintiff was disabled. I find the note ambiguous on this point. Noting that a patient is applying for disability benefits is not the same as opining that patient is disabled. However, to the extent Dr. Weller opined plaintiff was disabled, the ALJ owed no deference to that opinion because it was a statement about the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1) ("We are responsible

Second, plaintiff challenges the ALJ's decision to discount a questionnaire filled out by Dr. Beckstrand. The questionnaire asks whether (1) plaintiff's pain would preclude her from performing basic work activities, (2) plaintiff would need to take additional breaks due to pain, and (3) plaintiff would be absent at least two work days per month even if employed in a low-stress, sedentary, simple job. Tr. 463-64. Dr. Beckstand responded "yes" to each of these questions. Tr. 463-64. The ALJ assigned little weight to the questionnaire. Tr. 24. Because the questionnaire conflicts with other medical evidence in the record, the ALJ was required to reject it for specific, legitimate reasons.

The ALJ's reasoning meets that standard. First, the ALJ explained Dr. Beckstrand had questioned the reliability of plaintiff's assessment of her own pain, and noted plaintiff's pain had appeared to be so mild on a recent visit Dr. Beckstrand declined to conduct a physical spine examination. The ALJ rationally found those observations of mild pain inconsistent with the severe limitations in the questionnaire. Second, the ALJ noted Dr. Weller found plaintiff with full thoracic rotation on both sides with subjective pain complaints and normal neurological testing. Tr. 438. Again, the ALJ reasonably found those clinical results inconsistent with the level of limitation in Dr. Beckstrand's opinion. Finally, the ALJ found the limitations assessed by Dr. Beckstrand inconsistent with plaintiff's failure to follow prescribed treatments and with plaintiff's ADLs, specifically referencing plaintiff's ability to do yard work, do housework, complete a three-mile walk, and care for her autistic grandson. As explained in section I of this opinion, those findings of inconsistency are supported by substantial evidence. The ALJ therefore provided specific, legitimate reasons to give little weight to the questionnaire.

---

for making the determination of decision about whether you meet the statutory definition of disability. A statement by a medical source that you are 'disabled' . . . does not mean that we will determine you are disabled.")

Page 10 - OPINION AND ORDER

III.     *ALJ's Finding of Plaintiff's Carpal Tunnel Syndrom as Not Severe*

Finally, plaintiff argues the ALJ erred in finding her carpal tunnel syndrome non-severe

because "a finding that Plaintiff was limited in the use of her left hand could result in a difference

in the disability determination." Pl.'s Br. 17. At step two of the five-step sequential evaluation

process, the ALJ decides whether plaintiff has a medically determinable severe impairment or

combination of impairments that lasts or could be expected to last for a continuous period of not less

than twelve months. 20 C.F.R. §§ 404.1505(a), 404.1509. 404.1520(a)(4)(ii), (c). Plaintiff must

prove the physical or mental impairment by providing medical evidence consisting of signs,

symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.

20 C.F.R. §§ 404.1508, 416.908.

The ALJ's discussion of plaintiff's carpal tunnel syndrome is very brief, consisting of the

following two sentences:

> The claimant also has exhibited symptoms of or been diagnosed with carpal
> tunnel syndrome (Ex. 4F). The objective medical evidence does not indicate that
> these impairments have caused significant vocational limitations for at least 12
> consecutive months, therefore they are deemed non-severe.

Tr. 18.

Exhibit 4F consists of twenty-five pages of medical records. Those records show the

following: in January 2012, Dr. Weller diagnosed plaintiff with "probable carpal tunnel syndrome

left upper extremity" caused by injuries sustained in a car accident in November 2011. Tr. 272.

After an evaluation at with Rehabilitation Medicine Associates, plaintiff was diagnosed with carpal

tunnel syndrome; she was prescribed use of a splint "at night, while driving, and as needed during

daytime," with a recommended surgical referral if numbness did not resolve within a month. Tr. 273.

Page 11 - OPINION AND ORDER

A May 2012 treatment note indicates plaintiff was "await[ing] surgical consultation." Tr. 280. No records indicate plaintiff consulted with a surgeon or obtained further interventions for carpal tunnel syndrome. In her opening brief, plaintiff cites other records documenting numbness and tingling in her left hand; all of those records take place in the six-month span between November 2011 and June 2012. *See* Tr. 239, 322, 323, 354, 364, 472. Moreover, none of those records address severity with any specificity or suggest specific workplace limitations. Accordingly, the ALJ reasonably screened out plaintiff's carpal tunnel syndrome at step two because there is no evidence it persisted as a severe impairment for twelve months.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 26 day of September, 2016.

Ann Aiken
United States District Judge

Page 12 - OPINION AND ORDER